**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

MAXI-TAXI OF FLORIDA, INC., a Florida
corporation, et al.,

        Plaintiffs,

v.                                           Case No.  2:07-cv-82-FtM-34SPC

LEE COUNTY PORT AUTHORITY,

        Defendant.

_____/

## O R D E R[1]

    **THIS CAUSE** is before the Court on Defendant, Lee County Port Authority's, Motion

for Summary Judgment, Statement of Undisputed Material Facts and Memorandum of Law

(Doc. No. 56; Motion).  In support of the Motion, Defendant submitted the affidavit of Robert

Ball (Doc. No. 56-2; Ball Aff.), as well as the following depositions: Douglas Wilcox,

representative of Aaron Airport Transportation (Doc. No. 76; D. Wilcox Dep.), Nancy Wilcox,

representative of Best Value Taxi, Inc. (Doc. No. 77; N. Wilcox Dep.), Robert J. McDevitt,

representative of Luxury Sedan Services, Inc. (Doc. No. 71; McDevitt Dep.), Frank Weppner,

representative of Aristocrat Luxury Transportation, Inc. (Doc. No. 72; Weppner Dep.), Angel

David Perez, representative of Angel's Transportation  Services (Doc. No. 73; Perez Dep.),

Frank DeCicco, representative of Prestige Transportation, Inc. (Doc. No. 74; DeCicco Dep.),

_____

      [1]      This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available
electronically.  However, it has been entered only to decide the motions addressed herein and is not intended
for official publication or to serve as precedent.

Vincent D. Angiolillo, representative of Class Act Limousine (Doc. No. 75; Angiolillo Dep.),

Thomas Nichols, Director of Operations for Lee County Port Authority (Doc. No. 59; Nichols

Dep.), Abutalib Gulamali, Senior Manager for Lee County Port Authority (Doc. No. 60;

Gulamali Dep.), April Russ, Landside Supervisor for Lee County Port Authority (Doc. No. 66;

Russ Dep.); Mary Ellen Kazanjian, Ground Transportation Agent for Lee County Port

Authority (Doc. No. 68; Kazanjian Dep.), Gary Duncan, Assistant Aviation Division Director

for Lee County Port Authority (Doc. No. 63; Duncan Dep.), Robert Ball, Executive Director

for Lee County Port Authority (Doc. No. 67; Ball Dep.), Peter Modys, Division Director of

Aviation for Lee County Port Authority (Doc. No. 69; Modys Dep.), Mark Fisher, Division

Director of Development for Lee County Port Authority (Doc. No. 65; Fisher Dep.), Richard

H. Severson, Chief of Airport Police and Security for Lee County Port Authority (Doc. No.

61; Severson Dep.), Dan M. Craig, P.E., David Douglas Associates, Inc. (Doc. No. 64; Craig

Dep.), and James Jarvis, a transportation planner with Ricondo & Associates (Doc. No. 62;

Jarvis Dep.).[2]  See Notice of Filing Transcripts of Oral Depositions (Doc. No. 58).

Plaintiffs oppose the Motion.   See Plaintiffs' Memorandum in Opposition to

Defendant's Motion for Summary Judgment (Doc. No. 85; Opposition).  In support of the

Opposition, Plaintiffs submitted the affidavits of Douglas Wilcox (Doc. No. 85-2; D. Wilcox

---

[2]         On November 21, 2007, Defendant advised the Court that it had deposed Todd Mastro and Lisa
Mastro, representatives of Maxi-Taxi of Florida, Inc., but that Todd Mastro's deposition transcript was not
available for filing and Lisa Mastro's deposition transcript was filed only as an excerpt, see Deposition of Lisa
Mastro (Doc. No. 70).  See Notice of Filing Transcripts of Oral Depositions (Doc. No. 58) at 2.  Thereafter, on
December 5, 2007, Defendant filed both of these deposition transcripts with corresponding exhibits in their
entirety.  See Deposition of Lisa Mastro (Doc. No. 82; L. Mastro Dep.); Deposition of Todd Mastro (Doc. No.
83; T. Mastro Dep.).  Accordingly, all citations to the depositions of these individuals will refer to the transcripts
filed their complete form.

Aff.), Lisa Mastro[3] (Doc. No. 85-3; L. Mastro Aff.), and Vincent Angiolillo (Doc. No. 85-4; Angiolillo Aff.).  The Motion is now ripe for review.

## I. Procedural History

The Complaint in this action was originally filed in state court on January 12, 2007, <u>see</u> Complaint (Doc. No. 2; Complaint), and removed to this Court on February 14, 2007, <u>see</u> Notice of Removal (Doc. No. 1).  In the original Complaint, Plaintiffs Maxi-Taxi of Florida, Inc. (Maxi-Taxi) and Vincent D. Angiolillo asserted claims against Defendant Lee County Port Authority (LCPA) under 42 U.S.C. §1983 for alleged violations of the equal protection clause of the Fourteenth Amendment and the Florida Constitution, as well as claims for violations of Florida Statutes section 332.15 and tortious interference with a business relationship.  <u>See</u> Complaint at 3-6.  On August 8, 2007, the Court granted Plaintiffs leave to file an Amended Complaint to join additional parties as Plaintiffs in this action.  <u>See</u> Order (Doc. No. 39).  Thereafter, Plaintiffs filed their Amended Complaint (Doc. No. 44; Amended Complaint), adding several parties as additional Plaintiffs and asserting violations of the equal protection clause of the Fourteenth Amendment and the Florida Constitution, as well as a claim for tortious interference.  <u>See</u> Amended Complaint at 4-7.  Specifically, Plaintiffs alleged that Defendant's rules and regulations arbitrarily and unreasonably burden Plaintiffs and single them out for disparate treatment despite the fact that Plaintiffs and other ground transportation providers are similarly situated.  <u>See id.</u> at 4.  Plaintiffs assert that "[t]here is no peculiarity in the condition of Plaintiffs' provision of ground transportation that justifies

---

[3] The Court notes that the surname of Todd and Lisa Mastro is spelled differently in various pleadings and depositions.  For purposes of the instant Motion, the Court will adopt the spelling "Mastro" used in the Amended Complaint and Opposition.

their segregation for the purpose of providing the same service to customers as other ground transportation providers." Id. ¶ 20.  Moreover, Plaintiffs maintain that Defendant intentionally interfered with Plaintiffs' business relationships with their customers "by barring Plaintiffs from the use of certain traffic lanes and parking or waiting areas." Id. ¶¶ 26-28. As a result of Defendant's conduct, Plaintiffs seek declaratory and injunctive relief as well as compensatory damages. See id. at 5-7.

On April 16, 2007, the parties submitted a Case Management Report. See Case Management Report (Doc. No. 20).  Thereafter, on April 30, 2007, the Honorable Sheri Polster Chappell, United States Magistrate Judge, entered a Case Management and Scheduling Order, (Doc. No. 21; Case Management Order), which established October 31, 2007, as the deadline for completing discovery, and November 19, 2007, as the deadline for filing dispositive motions.[4]  See Case Management Order at 1.  On August 17, 2007, Defendant filed a motion to dismiss the Amended Complaint with prejudice for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), see Defendant Lee County Port Authority's Motion to Dismiss Plaintiff's Amended Complaint with Supporting Memorandum of Law (Doc. No. 42; Motion to Dismiss), which the Court denied on March 31, 2008, see Order (Doc. No. 129).  Accordingly, Defendant has filed an Answer and Affirmative Defenses (Doc. No. 131), addressing the claims raised in the Amended Complaint.  On November 19, 2007, Defendant filed its Motion for Summary Judgment, seeking the entry of judgment as a matter of law on all of the claims

---

[4]      On January 31, 2008, after the deadline for filing dispositive motions had passed, the Court modified the Case Management Order to allow Defendants a period of 30 days in which to depose witnesses identified in an affidavit filed by Plaintiffs as an exhibit to the Opposition.  See Order (Doc. No. 102).

in the Amended Complaint.  <u>See</u> Motion at 1.  Thereafter, Plaintiffs filed their Opposition to the Motion.  <u>See</u> Opposition.

## II. Background Facts[5]

Plaintiffs provide ground transportation services on a contract-for-hire basis at the Southwest Florida International Airport ("Airport"), <u>see</u> D. Wilcox Aff. ¶2, which is owned and operated by Defendant.  In addition to Plaintiffs, who provide prearranged and limousine transportation services, "on-demand" transportation providers, such as shuttle buses and taxicabs, also provide services to the Airport.  <u>See</u> Motion at 8; Opposition at 2-3; D. Wilcox Dep. at 64-65; Duncan Dep. at 52-53.  Both prearranged and "on-demand" transportation service providers "employ[] primarily four-door sedans such as Lincoln Town Cars," which are "not dissimilar from the four-door sedans operated at the airport as taxicabs."  <u>See</u> D. Wilcox Aff. ¶2.  However, in providing prearranged transportation services at the Airport, Plaintiffs require customers to make advance reservations in order to avail themselves of their services, <u>see</u> T. Mastro Dep. at 3; Russ Dep. at 7, whereas taxicab service providers wait in a demand line and provide customers with transportation on an ad-hoc basis, Russ Dep. at 46, Nichols Dep. at 27.  <u>See</u> Duncan Dep. at 45-46.

Both prearranged and on-demand transportation providers are required to possess and display permits issued by Defendant.  <u>See</u> Duncan Dep. at 46-47.  Defendant requires that on-demand vehicles be marked with a sticker, identifying them as "MBA" vehicles, and

---

[5]     Unless otherwise noted, the facts recited herein are undisputed.  As discussed <u>infra</u>, for the purposes of resolving Defendant's Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Plaintiffs.  The Court notes that these facts may differ from those ultimately proved at trial.  <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1190 (11th Cir. 2002).

to obtain a demand authorization permit, see id., which allows them access to the commercial concourse lanes, see Russ Dep. at 21.  On the other hand, Defendant requires prearranged transportation providers to possess and display valid Drive Tags issued by Defendant.  See T. Mastro Dep. Exhibit 4.  In order to obtain a Drive Tag, prearranged vehicle for-hire operators must present valid Taxicab and Livery Certificates issued by Lee County and also pay a fee of $30 per year, per company, to Defendant.  See id.; T. Mastro Dep. at 29.  In applying for a Drive Tag, prearranged operators must also provide proof of insurance for each vehicle in their fleet and list Defendant and the Lee County Board of Commissioners as certificate holders on the certificate of insurance.  See T. Mastro Dep. Exhibit 3.

Defendant requires on-demand operators to remain with their vehicles while they wait for their customers, whereas prearranged vehicle operators park in designated parking spaces in the garage, leave their vehicles unattended, and meet their customers inside the terminal.  See Russ Dep. at 47-49.  In addition, Defendant imposes different restrictions on the on-demand vehicle operators vis-a-vis the prearranged transportation providers.  For instance, taxicabs, as on-demand vehicles, are subject to rates approved by Defendant, but operators of prearranged vehicles set their own rates.  See id. at 47.  Defendant also imposes restrictions on the appearance of on-demand vehicles, see id. at 50, and requires vehicle operators to undergo drug tests, see D. Wilcox Dep. at 143-144.  In contrast, while Plaintiffs may choose to impose their own restrictions on their vehicles and operators, they are not subject to vehicle appearance, see Russ Dep. at 50-51, and operator drug testing requirements imposed by Defendant on the on-demand providers, see D. Wilcox Dep. at

- 6 -

143-44. Likewise, while on-demand vehicles are required to provide water and newspapers to customers, see id. at 142, and also accept credit card payments, see id. at 144, Plaintiffs are not bound by these customer-service-related requirements, see id. at 142-144.

Prior to August or September 2006,[6] prearranged transportation vehicle operators were permitted to leave their vehicles unattended in the commercial lanes. See Russ Dep. at 51; T. Mastro Dep. at 14. However, in August 2006, Defendant implemented a new regulation requiring prearranged vehicle operators, including Plaintiffs, to relocate their business activities from the commercial lane area to the public access lanes. See D. Wilcox Dep. at 107; T. Mastro Dep. Exhibit 1. Specifically, on August 11, 2006, April Russ, Landside Supervisor, Operations for LCPA, prepared and sent a letter to "All Courtesy Vehicle Permit Holders and Occasional Users," advising them that,

> Effective Friday, August 11, 2006, at 2:00 p.m. all courtesy permitted vehicles, except hotel shuttles, and occasional users will begin using the parking garage instead of dwelling in the commercial transportation plaza. The entrance gate to the commercial transportation plaza will be activated alleviating unauthorized and long standing vehicles.

See T. Mastro Dep. Exhibit 1. The letter explained that "[t]he Department of Homeland Security has raised the aviation threat level to high," and as such, "[t]he Lee County Port Authority is initiating several proactive security measures to enhance overall airport security consistent with our plans and goals." See id. Defendant reserved 24 parking spaces for use by the prearranged vehicles, 12 on each of the east and west ends of the parking garage.

---

[6]     Mr. Mastro testified in his deposition that prearranged vehicles were allowed to park in the commercial lanes prior to September 2006. See T. Mastro Dep. at 14. The Court notes that the regulation, on its face, became effective August 11, 2006, but determines that the precise date on which Defendant began to enforce the regulation is inapposite to the Court's resolution of this matter.

See Russ Dep. at 48-49.  Since the regulation became effective, Plaintiffs can no longer use the commercial lanes, and instead are required to park in the reserved spaces in the garage, see id. at 48, or in the commercial holding lot while they wait for their passengers, see Perez Dep. at 12-14; T. Mastro Dep. at 15-18.  In contrast, other transportation providers, including on-demand operators, may still use the concourse commercial lanes to pick up their customers.  See Nichols Dep. at 18-19.

Plaintiffs maintain that the regulation changed the manner in which they could compete with other transportation providers as well as the service they could provide to their existing customers.  See Amended Complaint ¶¶ 12-13, 17; see also T. Mastro Dep. at 14. In particular, Lisa Mastro, representing Maxi-Taxi, testified by affidavit that several of Maxi-Taxi's customers "consider the change in service provided by Maxi-Taxi to rise to the level of significant inconvenience."  See L. Mastro Aff. ¶4.  Ms. Mastro provided a list of customers, explaining that "[w]hile this list is not all-inclusive, it represents a significant loss of business to our company."  See id. ¶6.  She further averred that "there are many other customers who either utilize our services for drop off [sic] only or not at all subsequent to the changes imposed by the Defendant in 2006."  See id.

### III.  Standard of Review

Under Rule 56(c), Federal Rules of Civil Procedure (Rule(s)), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c); see also Ellis v. England, 432 F.3d 1321, 1325 (11th Cir. 2005).  An issue is genuine when the evidence is such that a

reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g. Co., 9 F.3d 913, 919 (11th Cir. 1993)); see also Scott v. Harris, ___ U.S. ___, 127 S. Ct. 1769, 1776 (2007) (indicating that there must be something more than a "metaphysical doubt" as to the material facts to show a genuine issue for trial).   "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Rule 56(b) permits the moving party to discharge this burden with or without supporting affidavits.  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).

Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.").  In addition, the dispute

must have a "'real basis in the record'" in order to constitute a genuine dispute of fact. <u>See</u> <u>Pace v. Capobianco</u>, 283 F.3d 1275, 1278 (11th Cir. 2002) (quoting <u>Mize</u>, 93 F.3d at 742). Nevertheless, in determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros.</u> <u>Int'l S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### IV. Summary of the Argument

In the Motion, Defendant argues that the Court should grant summary judgment  in its favor, as Plaintiffs have failed to establish the existence of triable issues of fact as to each count alleged in the Amended Complaint. <u>See generally</u> Motion.  With regard to Plaintiffs' equal protection claim, Defendant argues that Plaintiffs are not similarly situated to taxicab companies or other ground transportation providers. <u>See id.</u> at 12.  Defendant further contends that its rules and regulations regarding Plaintiffs' businesses are rationally related to legitimate governmental interests, namely, the "regulation and control of airport roadway traffic, protection of public safety, and the need to implement tighter security measures," <u>see</u> <u>id.</u> at 15, as well as the "safe, efficient and expedited operation of the airport," <u>see id.</u> at 17. Lastly, Defendant maintains that Plaintiffs' claim of tortious interference fails because "Plaintiffs do not allege the existence of specific and identifiable customers[,] but claim they had a business relationship with the public at large while servicing the airport." <u>See id.</u> Defendant maintains that a "general loss of business," without more, does not serve as the basis of a claim for tortious interference. <u>See id.</u> at 18.      In response to the Motion, Plaintiffs contend that they have adequately established claims for a violation of the equal

protection clause and tortious interference.  See generally Opposition.  In particular,

Plaintiffs assert that they have sufficiently shown that they are similarly situated to other

transportation providers who were treated differently.  See id. at 9-10.  Furthermore, they

maintain that Defendant has not demonstrated that its regulation is rationally related to a

legitimate government interest.  See id. at 11-16.  According to Plaintiffs, "[t]he time for

submission of evidence has not yet arrived.  It is axiomatic that a plaintiff need not prove its

case at any other time than at trial."  Id. at 16.  Lastly, as to the claim of tortious interference,

Plaintiffs contend that they are not alleging tortious interference based on their relationships

with the public at large, but rather that Defendant interfered with their relationships with

specific customers.  See id. at 18-19.  They maintain that these individuals are listed in an

affidavit attached to the Opposition.  See id.; L. Mastro Aff.

### V.  Discussion

#### A.  Equal Protection Claim[7]

In the Motion, Defendant asserts that it is entitled to summary judgment as to

Plaintiffs' equal protection claim, because Plaintiffs have not established that they are

similarly situated to taxicabs and other "demand vehicles."  See Motion at 13.  Defendant

further contends that even if Plaintiffs could demonstrate that they are similarly situated, the

_____

[7]      Plaintiffs alleged violations of both the United States and Florida Constitutions, but neither party has separately addressed the law applicable to claims under the United States Constitution, as opposed to the Florida Constitution.  The Florida Constitution, which provides that "[a]ll natural persons, female and male alike, are equal before the law . . . ," see Art. I, §2, Fla. Const., uses language similar to that of the United States Constitution.  In evaluating equal protection claims under both the United States Constitution and the Florida Constitution, Florida courts apply the same standards.  See e.g., Duncan v. Moore, 754 So.2d 708, 712-13 (Fla. 2000).  As such, in resolving the instant Motion, the Court also will employ identical standards to Plaintiffs' federal and state equal protection claims.

challenged regulations nonetheless survive rational basis review.  See id. at 17 (citing American V.I.P. Limousines, Inc. v. Dade County Bd. of County Comm'rs, 757 F. Supp. 1382, 1396 (S.D. Fla. 1991)).

### 1. Applicable Law

The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, §1.  "This provision creates no substantive rights," and instead "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  Vacco v. Quill, 521 U.S. 793, 799 (1997).  "The Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (citing F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)).  In this regard, it "'is essentially a direction that all persons similarly situated should be treated alike.'"  Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth., 825 F.2d 367, 369 (11th Cir. 1987) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (explaining that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents") (internal quotation marks omitted); Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1313 (11th Cir. 2006).  Thus, "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection

clause." E & T Realty v. Strickland, 830 F.2d 1107, 1109 (11th Cir. 1987); Campbell, 434 F.3d at 1314.

As a threshold matter, the Court turns to the question of precisely which type of equal protection claim Plaintiffs are asserting in this action. Equal protection claims fall into three categories. See E & T Realty, 830 F.2d at 1112 n.5. The first type is "a claim that a statute discriminates on its face." Id. In the absence of an allegation that the classification is based on inherently suspect distinctions or otherwise impinges on a fundamental right, to prevail on this type of claim, the plaintiff must show "that there is no rational relationship between the statutory classification and a legitimate state goal." Id. The second type of claim is one in which the party alleges "that neutral application of a facially neutral statute has a disparate impact." Id. at 1112. This claim requires that the plaintiff prove purposeful discrimination. See id. The third type of claim arises where the government unequally administers a facially neutral statute. See id. With respect to this third claim, the Supreme Court has recognized that such an equal protection claim may be successful even if brought by a "class of one."[8] Olech, 528 U.S. at 564. This claim requires that a plaintiff allege and eventually prove, that he or she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See id.; see also Campbell, 434 F.3d at 1314; E & T Realty, 830 F.2d at 1112-13.

While the Amended Complaint does not identify the type of equal protection claim

---

[8]     While the Supreme Court referred to this type of claim as a "class of one" claim, it concluded "that the number of individuals in a class is immaterial for equal protection analysis." Olech, 528 U.S. at 564. Instead, this type of claim relates to the allegations that the plaintiff or plaintiffs have been treated differently than others similarly situated and there is no rational basis for the disparate treatment. See id.

asserted in this case, Plaintiffs argue that <u>Olech</u> "offers a statement of the precise claim presented," <u>see</u> Opposition at 9, as Defendant has drawn an arbitrary and irrational distinction between Plaintiffs' vehicles and the "buses, courtesy vans, parking lot vans and other commercial vehicles which are permitted, along with taxicabs, to use the commercial lanes at the airport," <u>see id.</u> at 10.  Unlike the equal protection claim brought by the plaintiff in <u>Olech</u>, however, Plaintiffs' claim is not premised on an assertion of an unequal application of a facially neutral statute.  Plaintiffs do not purport to argue that Defendant applied the classification of "courtesy permitted vehicles, except hotel shuttles," in an unequal manner (e.g. favoring some individual courtesy permitted vehicles above others).  Instead, Plaintiffs assert that the regulation, on its face, impermissibly distinguishes between "courtesy permitted vehicles" and all other commercial vehicles.  Plaintiffs challenge this distinction based on an assertion that all commercial transportation vehicles are entitled to equal use of the commercial lanes at the Airport.  As such, the Court determines that Plaintiffs' equal protection claim is premised on a challenge to the regulation itself, not its application.

When a challenged classification, such as the one at issue in the instant case, does not burden fundamental personal rights or is not based on inherently suspect distinctions, such as race, religion, or alienage, the Court presumes "the constitutionality of the statutory discriminations and require[s] only that the classification challenged be rationally related to a legitimate state interest."[9]  <u>City of New Orleans v. Dukes</u>, 427 U.S. 297, 303 (1976); <u>see also</u> <u>Williams v. Pryor</u>, 240 F.3d 944, 948 (11th Cir. 2001).  Regardless of whether Plaintiffs

---

[9]      In the instant case, Plaintiffs have not alleged that Defendant's actions burdened a fundamental right, nor have they argued that Defendant has discriminated on the basis of a suspect class.  As such, the parties agree that rational basis review applies to the Court's review of the classification drawn by Defendant.

classify their equal protection claim as a challenge to a facially discriminatory regulation or as a class of one claim, in order to defeat summary judgment, Plaintiffs must establish a triable issue of fact[10] as to whether they are similarly situated to the other ground transportation providers and also negate <u>any</u> conceivable rational basis for treating Plaintiffs differently than the other grounds transportation providers.  See <u>Dukes</u>, 427 U.S. at 303; <u>Williams</u>, 240 F.3d at 948; <u>Avalon Carriage Service v. City of St. Augustine</u>, 417 F. Supp. 2d 1279, 1285 (M.D. Fla. 2006).

### 2.  Rational Basis Review

Application of the rational basis test is a two step process.  First, the Court identifies a legitimate government purpose the enacting governmental body could have been pursuing.  <u>Beauclerc Lakes Condo. Ass'n v. City of Jacksonville</u>, 115 F.3d 934, 935 (11th Cir. 1997).  Second, the Court determines whether a rational basis exists to believe that the legislation would further the hypothesized purpose.  <u>Id.</u>

### a.  Legitimate Government Purpose

Here, Defendant asserts that the rules and regulations at issue were enacted pursuant to its legitimate interest in the "regulation and control of airport roadway traffic, protection of public safety, and the need to implement tighter security measures," <u>see</u> Motion at 15, as well as the "safe, efficient and expedited operation of the airport," <u>see</u> <u>id.</u> at 17.  <u>See also</u> Ball Aff. ¶7 ("As a result of both of the Aviation Security Directives, I gave direction to airport

---

[10]    Despite Plaintiffs' suggestion to the contrary, <u>see</u> Opposition at 6, 16, Defendant has no obligation in this case to produce evidence to sustain its rationale for creating the classification at issue.  <u>See</u> <u>Parrish</u>, 2005 WL 1500894, at *3 (citing <u>Heller v. Doe</u>, 509 U.S. 312, 319-20 (1993)).

staff to relocate the prearranged vehicles from the commercial transportation lanes to the parking garage to eliminate unattended vehicles from within 300 feet of the terminal building."); Severson Dep. at 19-20 ("[The regulation] is in the interest of safety and security."). Plaintiffs do not appear to dispute that these are legitimate interests. See Opposition. While there may be other legitimate government interests, the Court determines that the objectives cited by Defendant are, indeed, legitimate interests. See Railway Express Agency v. New York, 336 U.S. 106, 109 (1949) (promoting traffic safety); Bah v. City of Atlanta, 103 F.3d 964, 967 (11th Cir. 1997) (public safety and the promoting a safe image); American V.I.P. Limousines, 757 F. Supp. at 1394 ("Control of traffic is a classic example of a legitimate governmental interest."). As such, the Court turns to the question of whether Plaintiffs have established that Defendant's decision rationally relates to the furtherance of these interests.

### b. Conceivable Rational Basis

"A statute is considered constitutional under the rational basis test when 'there is any reasonably conceivable state of facts that could provide a rational basis for' it." Doe v. Moore, 410 F.3d 1337, 1346 (11th Cir. 2005) (quoting FCC v. Beach Communications, 508 U.S. 307, 313 (1993)). The plaintiff can establish an equal protection violation only if there is no legitimate purpose for the regulation or "the means used are not a reasonable way to accomplish the goal." Hope for Families & Cmty. Serv., Inc. v. Warren, No. 3:06-cv-1113-WKW, 2008 WL 630469, at *9 (M.D. Ala. Mar. 5, 2008) (citing W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal., 451 U.S. 648, 668 (1981)). The Court's review is highly deferential and "rational distinctions may be made with substantially less than mathematical

- 16 -

exactitude."  Dukes, 427 U.S. at 303; see also Alamo Rent-A-Car, 825 F.2d at 370 (acknowledging that the government has "wide latitude in enacting social and economic legislation").  Indeed, the United States Supreme Court has warned that "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." Dukes, 427 U.S. at 303.  Likewise, the Eleventh Circuit has opined that "[a] statute is constitutional under rational basis scrutiny so long as 'there is any reasonably conceivable state of facts that could provide a rational basis for the' statute." Williams, 240 F.3d at 948 (emphasis omitted) (quoting Beach Communications, 508 U.S. at 314); see also Parrish v. Consol. City of Jacksonville, No. 3:04-cv-986-J-32HTS, 2005 WL 1500894, at *3 (M.D. Fla. June 22, 2005).  "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." Dukes, 427 U.S. at 303-04 (citing Ferguson v. Skrupa, 372 U.S. 726, 732 (1963)).  As such, the Court will find a statute unconstitutional in only the most exceptional circumstances.  See Moore, 410 F.3d at 1346-47; see also Williams, 240 F.3d at 948 (recognizing that "[a]lmost every statute subject to the very deferential rational basis scrutiny standard is found to be constitutional").

When a classification is subject to rational basis scrutiny, the plaintiff bears "the burden to negative every conceivable basis which might support it." Williams, 240 F.3d at 948 (internal quotation marks and emphasis omitted); see also Hope for Families, 2008 WL 630469, at *9; Parrish, 2005 WL 1500894, at *3 (recognizing that "a state or local government whose law is being challenged does not have to produce evidence to sustain

its rationale; rather, 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, . . . whether or not the basis has a foundation in the record'"). A government entity "has no obligation to produce evidence to sustain the rationality of a statutory classification." Heller, 509 U.S. at 320. Indeed, the rational basis identified by the governing authority need not be the reason that actually motivated it to enact the statute or regulation. See Williams, 240 F.3d at 948 (finding that "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data"); see also Alamo Rent-A-Car, 825 F.2d at 372 (finding that, if the justification for the law is at least debatable, then there is no violation of the equal protection clause). Nonetheless, even though rational basis review affords statutes a strong presumption of validity, "it is not toothless." Hope for Families, 2008 WL 630469, at *9 (citing Mathews v. Lucas, 427 U.S. 495, 510 (1976)).

As to the asserted bases for its decision to promulgate the challenged regulation, Defendant first notes that directives issued by the United States Department of Homeland Security prompted it to implement security measures designated by the Transportation Security Administration (TSA). See Motion at 15-16; see also Russ Dep. at 19; Nichols Dep. at 15-16. Defendant maintains that "[t]his translated into relocating the prearranged vehicles from the commercial transportation lanes to the parking garage to eliminate unattended vehicles from within 300 feet of the terminal building." See Motion at 15-16; see also Ball Aff. ¶7. Indeed, Robert Ball, the Executive Director of the Airport, testified by affidavit that "[a]s a result of . . . the Aviation Security Directives, I gave direction to airport staff to relocate the prearranged vehicles from the commercial transportation lanes to the parking

garage to eliminate unattended vehicles from within 300 feet of the terminal building." See Ball Aff. ¶7.  Moreover, Defendant points to a security breach at a nearby airport, which necessitated a "threat assessment" and subsequent action, including relocating prearranged vehicles. See Motion at 8-9; Duncan Dep. at 57-58.  Plaintiffs contend that Defendant was, in fact, exempt from the TSA security restrictions. See Opposition at 15.  In support of this assertion, Plaintiffs cite the deposition testimony of Richard Severson, Chief of Police and Chief of Security at the Airport, see Opposition at 15, in which Mr. Severson testifies that the Airport was exempt from the 300-foot rule imposed by TSA, see Severson Dep. at 17.

Applying rational basis review to Plaintiffs' equal protection claim, the Court determines that even if Defendant was exempt from the security mandate, its voluntary compliance with the federal directive undoubtedly provides a rational basis for the challenged regulation. See Panama City Medical Diagnostic Ltd. v. Williams, 13 F.3d 1541, 1547 (11th Cir. 1994) (Even where conceivable "rationales are based on faulty premises, the fact that they are arguable" satisfies rational basis review.).  Moreover, the Court rejects Plaintiffs' assertion that the security incident cited by Defendant is inapposite simply because Defendant has not explained "what kind of vehicles were being driven or how this relates to Plaintiffs' vehicles being denied use of the commercial lanes at Defendant's airport without banning the buses, shuttle buses, hotel/motel courtesy vans, tourist vans, etc. from those same lanes." See Opposition at 12.  Rather, Plaintiffs bear the burden to establish that Defendant acted irrationally in linking this incident with a need to increase its own security measures.

Defendant further asserts that its action was premised on the need to regulate and

- 19 -

control airport roadway traffic issues, specifically, that the challenged regulation was justified as a means "to reduce the congestion in the commercial lanes and the surrounding traffic areas." See Motion at 16; Ball Dep. at 7-8. Similarly, Defendant suggests that the regulation reflected an attempt to address pedestrian safety issues. See Motion at 16; Nichols Dep. at 17. In particular, Defendant argues that a crossing guard is available for the public access lanes, but not for the commercial lanes. See Motion at 16; Severson Dep. at 10-11; Nichols Dep. at 19. As such, Defendant determined that there would be "a reduced chance of a pedestrian-vehicle encounter if the prearranged vehicles were relocated." See Motion at 16; see also Gulamali Dep. at 19 (testifying that "[t]here are safety concerns when you have people crossing crosswalks and vehicles approaching from either direction").

With regard to the reduction of congestion, Plaintiffs counter Defendant's assertion, arguing that "Defendant offers no proof of this assertion and further offers no proof that if there is, in fact, traffic congestion[,] it might not be of greater relief to ban taxicabs from the commercial lane." See Opposition at 13. Similarly, on the subject of pedestrian safety, Plaintiffs argue that in imposing the challenged regulation, Defendant has drawn an irrational distinction and also failed to explain why Plaintiffs' "vehicles create a pedestrian safety issue, but buses, courtesy shuttles, vans and taxicabs do not." See id. Plaintiffs further maintain that "Defendant has not described any trait or condition particular to the type of vehicles employed by Plaintiffs in their ground transportation business that would cause a danger to pedestrians different from the dangers posed by the other permitted users of the commercial lanes." See id.

Preliminarily, the Court notes that Defendant is not required to produce evidence to

sustain its rationale for creating the classification at issue.  See Parrish, 2005 WL 1500894,

at *3 (citing Heller v. Doe, 509 U.S. 312, 319-20 (1993)).

> Rational basis review . . . 'is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.' Moreover, it is 'entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the' state or local action.

Parrish, 2005 WL 1500894, at *3 (internal citation and alterations omitted) (quoting Beach

Communications, 508 U.S. at 315).  Additionally, courts must

> accept a legislature's generalizations even when there is an imperfect fit between means and ends.  A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality.  The  problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.

Heller, 509 U.S. at 321 (citations omitted).  As such, even if Plaintiffs are correct that in

prohibiting taxicabs' access to the commercial lanes, Defendant could have addressed traffic

congestion issues in a more efficient manner, the Court nonetheless will not second-guess

the propriety of Defendant's determination in this matter.  Indeed, as instructed by the

Supreme Court, we "are guided by the familiar principles that a statute is not invalid under

the Constitution because it might have gone farther than it did, that a legislature need not

strike at all evils at the same time, and that reform may take one step at a time, addressing

itself to the phase of the problem which seems most acute to the legislative mind." Dukes,

427 U.S. at 305 (internal quotations and citations omitted).  Thus, even if the legislative act

is under-inclusive—i.e. the legitimate governmental interest would also be served by

applying the same restrictions to others, that fact will not invalidate the act as long as the line

drawing or classification is rational and not wholly arbitrary.  <u>See</u> <u>Williams</u>, 240 F.3d at 948 (recognizing that "'the legislature must be allowed leeway to approach a perceived problem incrementally,' even if its incremental approach is significantly over-inclusive or under-inclusive").  Therefore, the Court rejects the argument that Defendant's regulation was not rational simply because there may have been an arguably more efficient way to achieve its purpose.

Moreover, to the extent that Plaintiffs would have the Court determine that, in addressing the issue of pedestrian safety, Defendant should have drawn no distinctions at all between the various commercial transportation services and instead assumed an all-or-nothing approach to the problem at hand, such a position is contrary to precedent.  A line-drawing process in which a defendant properly engages will not be found unconstitutional simply because it has not addressed the entirety of a problem.  Defendant is "not required to address all aspects of a particular problem in one fell swoop."  <u>See</u> <u>Williams</u>, 13 F.3d at 1546.  Indeed, Plaintiffs' all-or-nothing position has been rejected by the Eleventh Circuit in considering other equal protection claims.  <u>See</u> <u>Beauclerc Lakes</u>, 115 F.3d at 935 ("A government is not required to provide sanitation service to all or none . . . .").  In light of the foregoing, the Court concludes that the challenged regulation does not violate the equal protection clause simply because it does not take an all-or-nothing approach to the issue of pedestrian safety.  Therefore, in limiting, but not entirely eliminating, transportation service vehicles' access to the commercial lanes, Defendant has not violated equal protection guarantees.

Upon consideration of the record evidence presented in this case, as well as the

broader context in which the challenged regulation was enacted, the Court finds that Plaintiffs have not met their burden of negating every conceivable rational basis for the challenged regulation.  In addition, the Court determines that the regulation challenged in this case has at least one conceivable rational basis and, thus, does not offend Plaintiffs' entitlement to equal protection of the laws.  As such, Defendant's Motion for Summary Judgment is due to be granted as to Plaintiffs' equal protection claim.[11]

## B.  Tortious Interference with Advantageous Business Relationships

Under Florida law, the elements of a claim of tortious interference with an advantageous business relationship are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." KMS Rest. Corp. v. Wendy's Int'l, Inc., 194 Fed. Appx. 591, 603 (11th Cir. 2006) (per curiam) (citing Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)); see also Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1343 (M.D. Fla. 2006); Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994).  This claim

---

[11]    The Court notes that if Plaintiffs challenge the instant regulation as facially neutral but unequally applied, they must also show "an element of intentional or purposeful discrimination." E&T Realty, 830 F.2d at 1113-14 ("'The unlawful administration by state officers of a statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'") (quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944)).  In light of the Court's finding that Plaintiffs have not met their burden to show that Defendant had no rational basis for the challenged classification, the Court need not reach the issue of whether the classification was based on "intentional or purposeful discrimination." See Avalon Carriage Service, 417 F. Supp. 2d at 1285 (noting that in order to prevail on an equal protection claim based on the unequal application of a facially neutral statute, a plaintiff must show both intentional or purposeful discrimination and the lack of a rational basis for the challenged classification).

"generally requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" Sarkis v. Pafford Oil Co., 697 So. 2d 524, 526 (Fla. 1st DCA 1997) (quoting Ethan Allen, 647 So. 2d at 815); see also Dunn v. Air Line Pilots Ass'n, 193 F.3d 1185, 1191 (11th Cir. 1999) (concluding that, in order to establish a "business relationship," the plaintiff must show "a relationship with a particular party, and not just a relationship with the general business community").

In Count II of the Amended Complaint, Plaintiffs allege that Defendant "knew of the relationship between Plaintiffs and their customers, particularly with regard to the ability of Plaintiff's [sic] to serve their customers," see Amended Complaint ¶25, and that it "intentionally disrupted the relationship between Plaintiffs and their customers by barring Plaintiffs from the use of certain traffic lanes and parking or waiting areas," see id. ¶26. Plaintiffs argue that "[a]s a result of Defendant[']s intentional acts, the business relationship between Plaintiffs and their customers has been disrupted," see id. ¶27, and "has resulted in a significant loss of business," see id. ¶28. Although Defendant admits that it denied Plaintiffs access to the commercial lanes at the Airport, it argues that it cannot be held liable for interference with Plaintiffs' business relationships because Plaintiffs have evidenced, at most, a general loss of business, which does not rise to the level of tortious interference. See Motion at 18. Moreover, Defendant submits that "Plaintiffs do not allege the existence of specific identifiable customers but claim they had a business relationship with the public at large while servicing the airport." See id. at 17. Lastly, Defendant argues that Plaintiffs have not demonstrated that Defendant acted with malice or ill-will in excluding Plaintiffs from

the commercial lanes, see id. at 19, nor have they shown that "their passengers can no longer use their services, or that [they] are prohibited from doing business at the airport," see id. at 17.

In the Opposition, Plaintiffs suggest that the Court should reject Defendant's assertion of a "lack of evidence" as to their tortious interference claim, as "the time for the presentation of evidence has not yet arrived." See Opposition at 16. Plaintiffs further maintain that "Defendant has offered no facts that contradict the allegations of Plaintiffs' complaint," and thus, has "not met the burden it must sustain." See id. at 16-17. Plaintiffs argue that they have alleged a business relationship with specific identifiable customers and not simply with the general public. See id. at 19. Lastly, Plaintiffs suggest that the Court should draw an inference of malice, based on "the conduct of Defendant in allowing all commercial vehicles of every type whatsoever the use of the commercial lanes at its airport while denying use of those lanes to a single commercial user, the Plaintiffs." See id. at 19.

## 1. Existence of a Business Relationship

In the Motion, Defendant contends that it is entitled to summary judgment on the tortious interference claim based on an assertion that Plaintiffs have provided "no proof that [they] had an enforceable business relationship with any identifiable customer." See Motion at 19. In response to this contention, Plaintiffs have attached to the Opposition an affidavit of Lisa Mastro, Maxi-Taxi's corporate representative, who provides a "list of customers of Maxi-Taxi who no longer always utilize our services to be picked up from the airport since the [Defendant] changed the rules and no longer permits us to remain with our vehicles in the commercial lanes nor permits us access to the commercial lanes at all, where in the past

- 25 -

they did." See L. Mastro Aff. ¶3.  She further asserts that these customers "consider the

change in service provided by Maxi-Taxi to rise to the level of significant inconvenience."

See id. ¶4.

Defendant is correct that a claim of tortious interference with a business relationship

claim requires proof of an existing relationship with identifiable and specific customers.  In

Ethan Allen, the Florida Supreme Court responded to the following certified question from

the Eleventh Circuit Court of Appeals:

> Under Florida law, in a tortious interference with business relationships tort
> action, may a plaintiff recover damages for the loss of goodwill based upon
> future sales to past customers with whom the plaintiff has no understanding
> that they will continue to do business with the plaintiff, or is the plaintiff's
> recovery of damages limited to harm done to existing business relationships
> pursuant to which plaintiff has legal rights . . . ?

Ethan Allen, 647 So. 2d at 813.  The court noted that while a plaintiff could seek recovery

for interference with present or prospective customers, "no cause of action exists for tortious

interference with a business's relationship to the community at large." Id. at 815.  Thus, the

court concluded that

> an action for tortious interference with a business relationship requires a
> business relationship evidenced by an actual and identifiable understanding or
> agreement which in all probability would have been completed if the defendant
> had not interfered.

Id.  Applying that rule to the facts before it, the court found that the plaintiff had alleged

existing business relationships that merely had the possibility of continuing, and thus, could

not support a claim of tortious interference.  See id.  It noted that the plaintiff furniture

manufacturer "had no identifiable agreement with its past customers that they would return

to [the defendant furniture dealer] to purchase furniture in the future," and thus, the plaintiff

had not demonstrated the existence of specific prospective business relationships with which Defendant allegedly interfered.  Id.  In so holding, the court distinguished the facts before it from those in Insurance Field Servs., Inc. v. White & White Inspection & Audit Serv., Inc., 384 So. 2d 303 (Fla. 5th DCA 1980).  See Ethan Allen, 647 So. 2d at 815 n.1.  In Insurance Field, Florida's Fifth District Court of Appeal found that the plaintiff agent/underwriter's ongoing employment with sixteen insurance companies satisfied the element of an existing business relationship, despite the absence of a written agreement. See Insurance Field, 384 So. 2d at 306.  The Florida Supreme Court in Ethan Allen described the specific "ongoing" relationships established by the plaintiff in Insurance Field, as "far different than the one maintained by a furniture dealer with 89,000 past customers." Ethan Allen, 647 So. 2d at 815 n.1.

The relationship with an identifiable customer need not be in writing.  However, it cannot be speculative.  The Eleventh Circuit, after surveying Florida decisions analyzing the nature of the business relationship necessary to establish a claim of tortious interference, acknowledged that a "business relationship need not be evidenced by a contract, but it generally requires an understanding between the parties that would have been completed had the defendant not interfered."  Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (internal quotation omitted) (quoting Ethan Allen, 647 So.2d at 814) (comparing Florida cases requiring the existence of a legal right with those allowing claims of tortious interference to proceed in the absence of a relationship giving rise to any legal rights).  Thus, mere speculative hope that past customers will continue to avail themselves of the plaintiff's business services does not provide a proper basis for a tortious

interference claim.  See Int'l Sales, 262 F.3d at 1155; see also MQ Assocs., Inc. v. North Bay Imaging, LLC, No. 07-14828, 2008 WL 713688, at *4 (11th Cir. Mar. 18, 2008) (affirming dismissal of tortious interference claim based upon the insufficiency of the plaintiff's "hope that some of its past customers may choose to buy again"); Ethan Allen, 647 So.2d at 815.

Additionally, in Ferguson Transp. Inc. v. North Am. Van Lines, the Florida Supreme Court further explained that a claim of tortious interference with a business relationship requires proof that the plaintiff had a business relationship with "identifiable customers." 687 So. 2d 821, 821 (Fla. 1996).  Proof of identifiable customers differentiates the claim from one that simply and inadequately alleges that the defendant interfered with the plaintiff's business relationships with the general public.  See Dunn, 193 F.3d at 1191 (requiring "a relationship with a particular party, and not just a relationship with the general business community").  Indeed, a claim for tortious interference cannot be established solely by evidencing that the defendant interfered with a relationship between the plaintiff and the public at large.  Ferguson, 687 So. 2d at 821-22; Sarkis, 697 So. 2d at 526-27.[12]

As a preliminary matter, the Court notes that Ms. Mastro's affidavit testimony purports to identify only Maxi-Taxi's existing or prospective business relationships.  Indeed, Plaintiffs, Vincent D. Angiolillo, Class Act Limousine, Aaron Airport Transportation, Inc., Angel Perez, Aristocrat Luxury Transportation, Inc., Prestige Transportation, Inc., and Luxury Sedan

---

[12]        In Sarkis, the First District Court of Appeal upheld the dismissal of a tortious interference claim where the plaintiff did not identify the specific customers and only alleged a general loss of business or interference with the plaintiff's relationship with the public at large.  697 So. 2d at 526-27; see also Dunn, 193 F.3d at 1191.

Service, LLC., have not identified any customer or pointed the Court to any "actual and identifiable understanding or agreement," much less one that "would have been completed if the defendant had not interfered." See Ferguson Transp., 687 So. 2d at 822. The failure of these Plaintiffs to alert the Court even to one specific, identifiable existing business relationship is fatal to their tortious interference claim. See Ethan Allen, 647 So. 2d at 815 (requiring an "actual and identifiable understanding or agreement"). Indeed, summary judgment is required where a plaintiff fails to make a showing sufficient to establish a genuine issue of material fact as to the existence of an essential element of the claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). As Plaintiffs failed to identify a relationship with any specific customer, they failed to discharge their burden. Therefore, the Court finds that summary judgment is due to be granted in favor of Defendant as to the tortious interference claims of Plaintiffs Vincent D. Angiolillo, Class Act Limousine, Aaron Airport Transportation, Inc., Angel Perez, Aristocrat Luxury Transportation, Inc., Prestige Transportation, Inc., and Luxury Sedan Service, LLC.

The Court next turns to Maxi-Taxi's assertion that it has established a genuine issue of material fact as to the existence of at least one specific identifiable business relationship. See Opposition 18-19; L. Mastro Aff. With regard to sixteen of the eighteen customers identified in Lisa Mastro's affidavit, Ms. Mastro has provided only a name and place of business, and no additional information. See id. ¶5. As to these customers, Ms. Mastro's affidavit falls far short of establishing "an understanding or agreement which in all probability would have been completed" if Defendant had not changed its regulation. See Ethan Allen, 647 So. 2d at 815. The affidavit establishes only that the customers identified constitute

past customers who may or may not have ever had any intention to utilize Plaintiff Maxi-Taxi's services again.  Ms. Mastro's affidavit provides no facts or allegations to support even a hint of speculation that these past customers of Maxi-Taxi would have had a need for its services again in the future or that they would have used Maxi-Taxi's services again but for Defendant's interference.  These allegations are insufficient as a matter of law to create a genuine issue of material fact as to the existence of a specific identifiable business relationship.

The Court next turns to the two specific customers about whom Ms. Mastro provided some additional information: "John F. and Rhodora Donahue (Federated Investors) and their family," who Plaintiff Maxi-Taxi asserts, "have been traveling with [Maxi-Taxi] for nearly 30 years," and "Claire Spellman (Vinyards Services)," who "personally travels with [Maxi-Taxi] and is in charge of [Maxi-Taxi's] contractual agreement with the Vinyards community and its residents who travel with [Maxi-Taxi's] company."  See L. Mastro Aff. ¶5.  As noted above, Maxi-Taxi "may not recover, in a tortious interference with a business relationship tort action, damages where the 'relationship' is based on speculation regarding future sales to past customers."  See Ethan Allen, 647 So. 2d at 815.  Maxi-Taxi has failed to point the Court to any identifiable understanding or agreement with the Donahues or Ms. Spellman, indicating that either of them would have continued to use Maxi-Taxi's services had Defendant not altered its regulations.  See id.  Nevertheless, even if the Court were to assume that Plaintiff Maxi-Taxi created an issue of fact as to the existence of a business relationship with the Donahues or Ms. Spellman, summary judgment is still due to be granted.

- 30 -

## 2. Intentional Interference[13]

Under Florida law, "[t]here is no such thing as a cause of action for interference which is only negligently or consequentially effected." Ethyl Corp. v. Balter, 386 So. 2d 1220, 1223-24 (Fla. 3d DCA 1980). Accordingly, in order to prevail on a tortious interference claim, a plaintiff must establish the defendant's "intent to interfere," as opposed to the defendant's mere "intent to act." See id. To satisfy the intent requirement, the plaintiff must show that the defendant's actions were purposely directed at the interference. See Networkip, LLC v. Spread Enterprises, Inc., 922 So. 2d 355, 358 (Fla. 3d DCA 2006).

Defendant contends that Plaintiffs have not established the requisite element of "intent to interfere" with their business relationships. See Motion at 18. In response to the Motion, Plaintiffs have failed to identify any record evidence suggesting that Defendant promulgated the regulation at issue with the intention of interfering with Plaintiffs' business relationships. Plaintiffs, as the parties opposing summary judgment, are not entitled to rest upon the mere allegations contained in the Amended Complaint. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995); Walker v. Darby, 911 F.2d 1573, 1577-78 (11th Cir. 1990). Instead, Plaintiffs are required to go beyond the Amended Complaint and, through affidavit, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that a genuine issue remains for trial. See Jeffery, 64 F.3d at 593-94. Plaintiffs have failed to do

---

[13]     The Court questions whether Ms. Mastro's affidavit is even sufficient to create an issue of fact as to whether Defendant's actions "interfered" with any relationship. The affidavit does not allege that Defendant's actions caused any customer not to use Plaintiff Maxi-Taxi's services. Ms. Mastro indicates only that customers consider Defendant's changes to rise to the level of significant inconvenience, but she fails to assert that any customer chose not to utilize Maxi-Taxi's services as a result of the changes.

so with regard to the issue of Defendant's intentional interference.

At most, Plaintiffs contend that they are "no longer able to provide the same services as they had prior to Defendant's actions." <u>See</u> Amended Complaint ¶27.   Even if Defendant's actions impeded Plaintiffs' ability to perform services in the same manner as they had prior to the regulation, and even if this change in service caused Plaintiffs' customers not to utilize Maxi-Taxi's services, Defendant's conduct fails to support a claim of the intentional tort of interference. <u>See</u> <u>Ethyl Corp.</u>, 386 So.2d at 1223 (finding that the intent element of interference was not satisfied where a plaintiff showed only that the steps taken by the defendant "very indirectly led to [a customer's] withdrawal from the arrangement").   The evidence suggests that any interference was, at best, consequentially effected, not the product of an intent to interfere. <u>See</u> <u>id.</u>   Indeed, the only evidence of record regarding Defendant's motivation is that provided by Defendant, which indicates that it promulgated the regulation in order to address issues of traffic congestion, public safety, and Airport security.   Without any evidentiary support for Plaintiffs' claims, the Court will not infer from the consequences of the regulation the requisite intent to interfere with Plaintiffs' business relationships.[14]   As Plaintiffs have not established a triable issue of fact as to Defendant's direct intent to interfere with their business relationships, the Court finds that the element of "intentional interference" is not satisfied.

### 3.  Unjustified Interference

Analysis of the justification element in an interference claim "requires an examination

---

[14]      "It is the obligation of the non-moving party . . . not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment . . . ." <u>Lawrence v. Wal-Mart Stores, Inc.</u>, 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002).

of the defendant's 'conduct, its motive, and the interests it sought to advance.'" <u>Security Title Guarantee Corp. v. McDill Columbus Corp.</u>, 543 So. 2d 852, 855 (Fla. 2d DCA 1989) (quoting <u>Smith v. Emery Air Freight Corp.</u>, 512 So. 2d 229, 230 (Fla. 3d DCA 1987)).  Under Florida law, "no cause of action for intentional interference exists which is the consequence of a rightful action."  <u>Barco Holdings, LLC v. Terminal Investment Corp.</u>, 967 So. 2d 281, 292-93 (Fla. 3rd DCA Sept. 26, 2007) (finding that where a purchaser of property "had a contractual right to exercise its purchase option at any time during the term of the lease, the lawful exercise of the purchase option could not constitute interference as a matter of law").  Accordingly, courts have determined that interference is justified where a defendant acts pursuant to its statutory or contractual authority.  <u>See</u>, <u>e.g.</u>, <u>Networkip</u>, 922 So. 2d at 358 (finding that because a service provider was within its contractual rights to cancel the contract, the cancellation did not constitute tortious interference).

The facts of the instant case are similar to those of <u>Watson Const. Co. v. City of Gainesville</u>, 433 F. Supp. 2d 1269, 1285 (N.D. Fla. 2006), <u>affirmed in part and reversed in part on other grounds</u>, No. 06-13585, 244 Fed. Appx. 274, 277 (11th Cir. Jun. 18, 2007), where the district court found that the interference with the business relationship at issue was justified and hence, no tortious interference claim could stand.  There, the district court considered whether a municipality's six-month moratorium on the issuance of industrial development permits was a constitutionally impermissible infringement on the plaintiff's right to equal protection of the laws, as well as an unlawful interference with his prospective

business relationships.[15]  See Watson, 433 F. Supp. 2d at 1279-81, 1285-86.   Applying

rational basis review to the plaintiff's equal protection claim, the court determined that there

was a rational nexus between the moratorium and several legitimate government objectives.

See id. at 1280-81.  Based on its finding that "the moratorium bore a rational relationship to

further its stated goals of protecting the health and safety of its citizens," and also that the

plaintiff failed to show "that the [City] Commission as an entity acted with unconstitutional

motive," the court concluded the defendant was entitled to summary judgment on both the

equal protection and tortious interference claims.   See id. at 1286.   Upon review of the

district court's decision, the Eleventh Circuit affirmed as to both the equal protection and

tortious interference claims, noting that the properly enacted moratorium before it did not

"'intentionally and unjustifiably" interfere with the plaintiff's purchase and sale contract.  See

Watson, 244 Fed. Appx. at 277.

Likewise, in the instant case, the Court has determined that Defendant's promulgation

of the regulation at issue was rationally related to the legitimate government objectives of

promoting public safety and security and reducing traffic congestion at the Airport.

Moreover, while Plaintiffs suggest that the Court should infer malice based solely on

Defendant's act itself, they have not provided any evidence in support of this assertion.

Indeed, the record is devoid of even a scintilla of evidence of an improper motive underlying

the regulation.  As such, the Court determines that Defendant's properly enacted regulation,

supported by at least one conceivable rational basis, does not constitute an "unjustified"

---

[15]    The plaintiff in Watson also challenged the moratorium as a due process violation and an unlawful taking.  See Watson, 433 F. Supp. 2d at 1272.

interference as a matter of law. Therefore, the Court finds that in implementing the regulation, Defendant did not intentionally and unjustifiably interfere with Plaintiffs' business relationships with its customers.[16]

**VI. Conclusion**

Based on the foregoing, the Court concludes that Defendant's Motion should be granted. Accordingly, it is hereby

**ORDERED**:

1.      Defendant, Lee County Port Authority's, Motion for Summary Judgment, Statement of Undisputed Material Facts and Memorandum of Law (Doc. No. 56) is **GRANTED**.

2.      The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant, and against Plaintiffs Maxi-Taxi of Florida, Inc., Vincent D. Angiolillo, Class Act Limousine, Aaron Airport Transportation, Inc., Angel Perez, Aristocrat Luxury Transportation, Inc., Prestige Transportation, Inc., and Luxury Sedan Service, LLC.

3.      The pretrial conference scheduled for Wednesday, April 30, 2008, at 4:00 p.m. is hereby **CANCELLED**, and the Clerk of the Court is **DIRECTED** to remove this case from the May 5, 2008 trial calendar.

---

[16]      As the Court has determined that summary judgment is due to be granted on Plaintiffs' tortious interference claim, it need not address Defendant's arguments regarding causation and damages.

4.      The Clerk of the Court is further directed to close the file and terminate any

remaining motions and deadlines as moot.

**DONE AND ORDERED** at Fort Myers, Florida, this   29th   day of April, 2008.


MARCIA MORALES HOWARD
United States District Judge


lc5
Copies to:
Counsel of Record